Dear Sen. Hainkel:
You requested the opinion of this office concerning whether the Louisiana Cancer Research Center of L.S.U. Health Sciences Center in New Orleans/Tulane Health Sciences Center (the "Center"), created pursuant to Act No. 41 of the First Extraordinary Legislative Session of 2002 (the "Act"), is a private entity.
The purpose of the Act as set forth in La.R.S. 17:1921 is "to create the Louisiana Cancer Research Center of L.S.U. Health Sciences Center in New Orleans/Tulane Health Sciences Center with the primary function of conducting research and promoting education in the diagnosis, detection, and treatment of cancer in its pursuit of obtaining National Cancer Institute (NCI) designation for the two health sciences centers in New Orleans, Louisiana. . . By coordinating and focusing the cancer research efforts at the Louisiana Cancer Research Center of L.S.U. Health Sciences Center in New Orleans/Tulane Health Sciences Center and by providing modern new research resources and infrastructure, the cancer centers in New Orleans will be able to develop their current facilities and recruit the new faculty members necessary to achieve the designation as an NCI designated cancer center. . ."
La.R.S. 17:1922 created the Center "as a body corporate under the administration of a governance board as provided in this Chapterand in accordance with R.S. 17:3390(B). . ." (Emphasis added).
La.R.S. 17:3390(B) provides as follows:
 "B. A nonprofit corporation, whose principal purpose is to support one or more programs, facilities, or research or educational opportunities offered by public institutions of higher education, shall be a private entity that shall not be deemed to be a public or quasipublic corporation or an administrative unit, public servant, employee, or agent of any institution of higher education for any purpose whatsoever if it meets all of the following criteria:
 (1) The majority of the voting members of the corporation's board of directors are not members or employees of a higher education management board.
 (2) The corporation is under the management and control of a board of directors elected by the contributing members or shareholders of the corporation.
 (3) The corporation reimburses, either directly or through in-kind services, the cost of housing, personnel, which personnel shall remain public servants for all purposes, and other support furnished to the corporation by any institution of higher education." (Emphasis added)
Thus the question becomes, does the Center satisfy the criteria set forth in La.R.S. 17:3390(B)?
The Center was created as a nonprofit corporation in accordance with the Louisiana Nonprofit Corporation Law, La.R.S. 12:201, et seq.[1]
The Internal Revenue Service has recognized the Center as a non-profit corporation.[2] As set forth in La.R.S. 17:1921, quoted above, and the Articles of Incorporation, there can be no question that the Center's principal purpose is "to support one or more programs, facilities, or research or educational opportunities offered by public institutions of higher education". Article IV of the Articles of Incorporation sets forth the purposes of the Corporation as follows:
 "The Corporation is organized and shall be operated exclusively for charitable, educational and scientific purposes within the meaning of Section 501(C)3) of the Internal Revenue Code of 1986 . . . The primary purpose of the Corporation will be to conduct and support research and promote education in the diagnosis, detection, and treatment of cancer in the pursuit of obtaining National Cancer Institute designation for its members, the Louisiana State University Health Sciences Center in New Orleans and the Tulane University Health Sciences Center, which designation is the recognized gold standard for excellence in cancer research, treatment and prevention. To accomplish this purpose, the Corporation will support the cancer research efforts at the Louisiana Cancer Research Center of L.S.U. Health Sciences Center in New Orleans and Tulane University Health Sciences Center as well as provide modern new research resources and infrastructure." (Emphasis added)
As to the three listed criteria in R.S. 17:3990, Article II of the Articles of Incorporation require the Corporation at all times to satisfy those three criteria.
With specific regards to the first criteria, that the majority of the voting members of the corporation's board of directors are not members or employees of a higher education management board, La.R.S. 17:1923
provides with respect to the governing board, in pertinent part as follows:
 A. . . . The board shall consist of the senior vice president for health sciences of Tulane University Health Sciences Center, a senior Louisiana State University Health Sciences Center representative appointed by the president of the Louisiana State University System, a member appointed by the senior vice president for health sciences of Tulane University Health Sciences Center, a member appointed by the president of the Louisiana State University System from the Louisiana State University Health Sciences Center, the secretary of the Department of Economic Development or his designee, the chairman of the Louisiana Board of Regents or his designee, and such other persons as may be appointed by the unanimous consent of the board. . ."
Thus, the statute requires a minimum of six persons on the Board, of which only two are members or employees of a higher education management board[3], namely L.S.U. Article VI of the Articles of Incorporation provides that "the number of Board members shall be determined by the Board from time to time." We have been advised that the Board currently has a total of nine members, of which only two are L.S.U. employees.
Regarding the second criteria, that the "corporation is under the management and control of a board of directors elected by the contributing members or shareholders of the corporation", Article VI of the Articles of Incorporation further provides that the "Board of Directors shall be composed of the persons elected by the Corporation's members following their appointment or designation as provided below" followed by the six persons listed in the statute. While a portion of the members of the Board are designated by statute, under the Articles of Incorporation all members must also be elected by the members. The members of the Center are the L.S.U. Health Sciences Center in New Orleans and the Tulane University Health Sciences Center.
We have been advised that the Center, in accordance with the Articles of Incorporation, will reimburse, either directly or through in-kind services, the cost of housing, personnel, which personnel shall remain public servants for all purposes, and other support furnished to the corporation by any institution of higher education.
Based upon the foregoing, it is the opinion of this office that the Center meets the criteria set forth in La.R.S. 17:3390 and thus is a private entity that shall not be deemed to be a public or quasipublic corporation or an administrative unit, public servant, employee, or agent of any institution of higher education for any purpose whatsoever.
You also requested the opinion of this office concerning a proposed bond issuance by the Health Education Authority of Louisiana ("HEAL") for and on behalf of the Center. You advised that HEAL contemplates issuing its revenue bonds pursuant to the authority contained in La.R.S. 17:3051, et seq. (the "HEAL Act") and lending the proceeds to the Center for the purpose of financing the cost of acquiring, constructing and equipping a cancer research project. HEAL was also granted authority to issue revenue bonds for a cancer research project in Act No. 24 of the Regular Session of 2002 (the "Capital Outlay Act"). You question whether the provisions of the Capital Outlay Act would apply to the bonds if the bonds were issued under the HEAL Act.
There are many instances where there is more than one authorization for the issuance of bonds for a particular entity or project. One example pertains to the bond authorization for the Greater New Orleans Mississippi River Bridge No. 2. In Act No. 402 of the Regular Session of 1976, as amended, the legislature authorized the issuance of both general obligation bonds and revenue bonds for the construction of the bridge. At the same time, general obligation bonds for the project were authorized in the annual omnibus bond authorization act. The State issued bonds, on more than one occasion in the 1980's, utilizing the omnibus bond act authorization and not the general obligation authorization contained in Act 402.
Likewise, if the bonds for the Center are issued under the authorization of the Capital Outlay Act, the provisions of the Capital Outlay Act would apply to the bonds. If however, the independent authorization for the issuance of the bonds contained in the HEAL Act is used, then the provisions of the HEAL Act and not the Capital Outlay Act would apply. Of course, if both the HEAL Act and the Capital Outlay Act are cited as the authority for the issuance of the Center bonds, both Acts, which may contain mutually exclusive provisions, would apply to the bonds.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
[1] See, Certificate of Incorporation and the Articles of Incorporation of Louisiana Cancer Research Center of L.S.U. Health Sciences Center in New Orleans/Tulane Health Sciences Center, Article II(A) and (B).
[2] See, IRS correspondence dated March 31, 2003.
[3] The higher education management boards are the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, the Board of Supervisors of Southern University and Agricultural and Mechanical College, the Board of Trustees for State Colleges and Universities (now the University of Louisiana System), and the Board of Supervisors of Community and Technical Colleges. La.R.S. 17:3202, La.R.S. 17:3399.5.